Good morning, Your Honor, Judge Thomas, Judge Schroeder, Judge Nguyen. I hope I'm pronouncing that correctly. My name is Jeff Buscella. I am counsel for Mr. Isabel Perez-Arellanez, who is currently serving a de facto life sentence in the Federal Bureau of Prisons as a result of the errors committed in the district court in this case. To begin with, Your Honor, the defendant, the appellant in this case, was convicted as a result of the district court's misinterpretation of the hostage-taking statute. It's instructing the jury incorrectly, and as a consequence of those two errors, the jury is also incorrectly denying appellant's motion for judgment of acquittal. There are a number of reasons why I think or why appellant submits that the hostage-taking statute was incorrectly applied and the jury was improperly instructed in this case. To begin with, as we've argued in the briefs, the plain language of the statute would seem to require that third parties be the subject of some sort of demand, that they be aware of the circumstances of the purported hostage-taking and that some sort of demand be made of them to make payment, to take some action, to refrain from taking some action in exchange for the hostage-takers agreeing either to release the hostages or to do something else, which presumably is beneficial to the third parties. As we've argued in the briefs, I think the plain language of the statute requires that. But even if the Court were to conclude that the statute is unclear, there are a number of reasons why I think appellant's interpretation of the statute is correct. To begin with, if the Court were to employ issues of statutory construction, I think this is an important point. The original hostage-taking statute was an attempt to implement an international treaty on terrorism. That congressional intent is referred to repeatedly in the congressional record, in the report of the committees that reported the bill out of committee. In fact, the underlying hostage-taking statute was intended to essentially adopt the provisions of this international treaty. And so if you were to use the hostage-taking statute as one method of determining Congress's intent as to what the meaning of the elements of the hostage-taking statute are, one way of doing that would be to ask yourself in the context of international terrorism whether you could have a terrorist incident in which third parties, whether they be private or governments, are wholly unaware of the circumstances. In other words, if someone, let's say, is kidnapped in a foreign country, but the third parties, neither their families nor the United States government, are aware that they've been kidnapped, and the third parties are unaware that there is any threat posed to the people that have been kidnapped, they're unaware of the kidnapping itself, and there are no threats and there are no demands, I think it's fairly clear that under the terrorism statutes and our international terrorism treaties, I mean, you wouldn't have an act of terrorism. You might have a kidnapping, you might have a robbery, you might have something else, but you wouldn't have an international incident involving terrorism, because terrorism necessarily involves an attempt to influence the behavior of third parties. That's important because if you were to rely on that aspect of the statutory intent of Congress with respect to the underlying terrorism crimes in the United States, it would be somewhat absurd to contend that third-party notice, compulsion, third parties being, demands or threats being made towards third parties as a condition for the release of hostages, for example, that none of that is necessary in the domestic context. I would call... I would call on the defense actions, the focus is appropriately on the defendant's actions, the defendant's intent and knowledge. I don't see anything in the language or any case law, even by analogy, that would require third parties to know that the victims are being held against their will. So do you have... Do you have any case law in other areas of perhaps other criminal statutes that you can draw on by analogy? Well, yes, Judge Nguyen. The first thing is... It's actually Nguyen. Pardon me? It's actually pronounced Nguyen. Nguyen. Okay. Thank you very much, Judge Nguyen. I would cite the Court to United States v. Rodriguez, which is the Second Circuit decision decided approximately six years ago, which was cited in appellant's briefs, did not go into detail. But the Court should take special care to read the Rodriguez decision. To answer your question, the reason... There aren't any cases. The laundry list of cases that have been cited by both parties here all involve quid pro quo demands, every single one of them. And I can give you the list of all the names, but they all involve quid pro quo demands. Those cases don't hold, don't have a holding, which defines the third element in this case. The only case that I'm aware of nationwide is the Rodriguez case, which has actually addressed this issue. Arguably, it's the holding in the Rodriguez case. In Rodriguez, the Second Circuit was really focused on a determination as to how long, and by the way, I'd like to request two minutes of rebuttal, was focused on the issue of how long the detention had to be for a hostage-taking to take place. In that case, the so-called detention was only about 15 minutes, and for various reasons, the Second Circuit concluded that that did not amount to a hostage-taking case. But in doing so, Rodriguez Court had to determine when did the actual hostage-taking commence. And the language of the Court, I think, is quite clear. The Court said, after discussing the congressional purpose and congressional intent, moved on to say, if I can find the language, detaining Mendez for the purpose of compelling a third person to do an act as a condition for her release did not occur until the demand for payment was made at the service area. So this was a case where there was a very lengthy interaction between the defendants in that case and the victims, but the victim, for a considerable amount of time, didn't realize she was being held in any kind of detention situation. She was not the subject of threats. Her husband was the third party, but her husband knew nothing about what was going on. He didn't know she was being detained. He didn't know she was frightened. He didn't know that she was the subject of any kind of hostage-taking or attempted hostage-taking situation. The husband was not the subject of any threats or communications at all. It was only after a considerable amount of time went by that finally there was a confrontation between appellant in that case and the husband, wherein appellant stated to the husband, you need to pay us so much money so we can let her go. The Second Circuit concluded that that was a necessary factual predicate for finding a hostage-taking under the federal hostage-taking statute. And I think the Court should consider the Rodriguez case as highly persuasive in favor of appellant's position here. I'm not aware. There may be other circuits that have weighed in. I just didn't find any other opinions that dealt with the express issue here. In every reported decision the Ninth Circuit has handed down, it's never dealt with this. This is a case of first impression in the Ninth Circuit. But in every single case, and I must have cited a couple of dozen cases in the briefs, they're all involving quid pro quo demands. There are explicit threats. There are direct negotiations with the third parties. This is critically important, because I think if you read the government's arguments carefully, you would come to the conclusion that the government is implicitly arguing that you don't even need the third parties. I mean, when you think about the consequences of what they're saying, the consequences of their argument is that if I tell my wife, who's my partner in crime, that I intend to go next door, I'm going to hold my neighbor at gunpoint, and I'm going to try to figure out how to get some money out of him. And I go next door, and I hold my neighbor at gunpoint, and I say, I need to get some money from you. And I say, why don't you give me your PIN number to your ATM, and I'll go get some cash. And after a period of time goes by, he says, no, no, no, I've got $5,000 in cash in a box in my bedroom. I'll give you that. And I say, okay. It seems to me the government would be arguing that I've committed a hostage-taking, because at least for a few minutes I had the intention of maybe going to this man's bank. And so, therefore, there was some fleeting consideration of bringing some third party into this. I don't think that is sufficient to qualify under the statute. And I think if the Court is going to give the statute its plain meaning, it needs to do that. It can't ignore important textual text, aspects of the text, cannot ignore the words in the text. If there's ambiguity, it seems to me the Court has to apply the rule of lenity. If the Court looks to the statutory intent, I think that strengthens Appellant's position. And finally, it doesn't really — it matters to some extent, but ultimately it may not matter. It's only a question of the defendant's intent, period. The district court gave the jury an instruction that at a bare minimum created ambiguity and confusion in the jury's minds as to whether they should carefully consider all the evidence that bore on the defendant's intent. Because the factual record indicates, I think, almost conclusively that the defendant had no intention with respect to at least two of these victims. He was perfectly happy if their families didn't know anything about what was going on. And the Court completely ignored that. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. My name is Matthew Castle. I represent the United States in this appeal. The defendant was convicted by a jury of nine counts and sentenced to an aggregate total of 70 years by the district court. That judgment and sentence are in place. I'll start out with the — we didn't discuss three of the four issues raised in the Appellant's brief. I think they're adequately addressed in the brief, so. I would agree. I'll stick to the interpretation of the hostage-taking statute, which is 18 U.S. Code 1203a. The government's position is that the district court adequately addressed the jury's question. And as with most criminal statutes, almost all criminal statutes, the government would urge the court to look to the elements. They are clear in this case. And they all deal with the defendant. There is no mention of the family — of a third party and what their knowledge needs to be. And it was based on that fact that the district court answered the jury's question. They specifically asked whether or not the family members needed to know or suspect anything. And the judge accurately answered the question and said, it is not necessary. And the reason why is because the focus should be on the defendant's intent and the defendant's actions. There's three elements to the offense. One, that the defendant intentionally seized or detained the victims. Two, that the defendant threatened to kill, injure, or continue to detain the victims. And three, that the defendant acted with purpose and intent to compel a third person to act or refrain from acting as an explicit condition for the victim's release. Nowhere does it mention the knowledge, the understanding, the state of mind of the third party. The only ambiguity is that which has been created here by the appellant. Now, it's clear that the jury asked the question. They just wanted to be sure because the record indicates that at least one of the victims' family members in this case wasn't sure. They didn't know. And that's why the jury asked the question. It wasn't because of any ambiguity. It was because the evidence bore that out. So the government would ask the court to effectively keep it simple and look to the elements of the offense. There's no need to resort to the rule of lenity. There's no need to talk about the legislative history of this statute when the elements are clear. And the government's position is that the elements are clear here. And we cited the Sierra Velazquez case, which is 310 F. 3rd, 1217. It's a 2002 case where a defendant attempted to add on an additional element in the hostage, to the hostage-taking statute in the alien smuggling context. And the court held, rightly so, that all that is required are that the elements are proven. And there's a text there that I quoted in the brief. And also, I would note that the court specifically held that 1203A is sufficiently specific for notice purposes. And that's important here because they address the ambiguity of the argument. So that's the government's position in the 1203A argument raised by the defendant. I know I've kept it short. I'm open to any questions that the court has on this issue. Any questions?  Thank you, counsel. Thank you very much. Your Honors, with respect to the hostage-taking argument, the government's correct. I think the issue really boils down to the third so-called element. And the government is correct that many cases reported by the Ninth Circuit have listed a series of elements, three elements. And there's no disputing, really, what the elements are as they've been listed in those cases, because it's simply a repetition of the statute. The question is, and this is what none of the circuits have really done, certainly not the Ninth Circuit, is how do you define the third element? There's been really no discussion of it. In this circuit, although as stated earlier, the Second Circuit has. The government's response right now, I think, is, and this runs through the reply brief, is a certain frustration on appellant's part because the response doesn't make any sense. The government relies heavily on Sierra Velazquez, but why would they? It's a quid pro quo case involving an explicit threat of harm about which the third parties were not only aware, but they were brought into it. Every single case cited by the government involves a quid pro quo, with the possible exception of one 1995 case that's unclear. So the ambiguity that comes in here, I think, is because we're having this argument. I mean, the statute is not clear. Criminal statutes are not exclusively aimed at the intent of defendants, but also aimed at their conduct, usually aimed primarily at their conduct. What did they do? There was a great deal of conflict about what the statute made below, and therefore, I think the Court, if a Court cannot resolve it with other rules of statutory construction at a minimum, as the Granderson Court said, if there's any doubt about the statute's meaning, then the Court should resort to the rule of lenity. Thank you, Counsel. Thank you. Thank you both for your arguments this morning. The case just heard will be submitted for decision, and it will be in recess.
judges: Schroeder, Thomas, Nguyen